BRUNNEN v. SOMBORN. See Case No. 496.

## Case No. 2,055.

### In re BRUNQUEST.

[7 Biss. 208;[1] 14 N. B. R. 529.]

District Court, E. D. Wisconsin. June, 1876.[2]

BANKRUPTCY—STATUTORY LIEN—LIMITATIONS.

1. A lien which derives its existence wholly from a state statute, and the continuance of which is by such statute made dependent upon the commencement of a suit in the state court within a prescribed period, is not preserved as a valid living incumbrance upon the bankrupt's estate, when no suit has been commenced in the state court and no step taken in the bankrupt court equivalent to such suit within the time limited by the statute for the preservation and enforcement of the lien.

2. Such a lien, liable to lapse from omission to do an act required to be done for its preservation by the statute creating it, is not kept alive and continuing by virtue alone of the commencement of bankruptcy proceedings.

3. The failure of lien claimants to present their claims or liens for recognition and enforcement to the bankrupt court within the period limited by the statute, bars such claims as effectually as omission to bring suit if the bankrupt were solvent.

[In bankruptcy. In the matter of William Brunquest. Proceeding by Smith & Butler and Simpson & Simpson to establish a statutory lien against the bankrupt estate. The commissioner reported in favor of the claims, and the assignee and certain mortgage creditors excepted to the report. Exceptions sustained.]

Hastings & Greene, for lien claimants.
Joshua Stark, for mortgage creditors.
Vroman & Sale, for assignee.

DYER, District Judge. Chapter 154 of the Laws of Wisconsin for 1862 [Sess. Laws, p. 86] provides, that any person who may perform any labor or services in running, booming or towing any logs or timber in certain counties in this state, shall have a lien upon such logs or timber for the amount due for such labor and services. The second section of the act provides, that no such demand or claim shall remain a lien on any such logs or timber, unless a petition or statement thereof in writing, under oath, shall be made and filed in the office of the clerk of the circuit court of the proper county, within certain periods named in the statute. Then follows a provision that suit shall be commenced for the recovery and enforcement of such claim or demand, within four months after the filing of such statement or petition. Smith & Butler had a contract with the bankrupt Brunquest, to cut and drive logs owned by him, and they employed certain parties, who are among the lien claimants here, to do the work. Simpson & Simpson also had a contract with Brunquest for driving logs down the Oconto river and some of its tributaries, and they also employed laborers who are among the lien claimants to do the work under their contract. Failing to obtain payment from their employers, these claimants are now attempting to assert liens upon the logs which constitute part of the assets of the bankrupt under this statute. The lien claimants employed by Smith & Butler, with the exception of two, filed their petitions for liens within thirty days from the time when their labor and services were completed, but after Brunquest, the bankrupt, and owner of the logs, had filed his petition in bankruptcy, which petition was filed on the 28th of August, 1874. The lien claimants employed by Simpson & Simpson, filed their petitions within the statutory period of thirty days, and before the petition in bankruptcy was filed. Bankruptcy proceedings were commenced in this court before the four months prescribed by the statute, in which to commence a suit for the recovery and enforcement of these claims had expired, and no suits were ever commenced in the state court to enforce these asserted liens, nor within that period did the claimants make proof in this court of any claim upon or against this property; nor did they within that period apply to this court for enforcement of their liens. The assignee of the bankrupt and certain mortgage creditors now contest the validity of these alleged liens, and resist their recognition and enforcement. Their position is that these liens being purely statutory, every requirement of the statute must be complied with in order to keep them alive and in force; and as there was a failure to commence suit in the state court within the four months named in the statute, or to do that in the bankruptcy proceedings which could be regarded as equivalent to a suit, the liens have lapsed and cannot be recognized.

The position of the lien claimants is, that after adjudication in bankruptcy, it was not only not necessary to bring suits in the state court to enforce their liens, but that they could not properly do so; that these liens were existing and provable at the time the bankruptcy proceedings were commenced, because the work had been done, and the petition had been filed within the time prescribed by the statute; that under the broad language of the first section of the bankrupt act [14 Stat. 517] this court has not only express but exclusive jurisdiction over all liens upon the bankrupt's property, and for their ascertainment and liquidation; that suits brought in the state court after the

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court (case not reported).]

commencement of bankruptcy proceedings, to enforce the liens, would have been in disregard of the authority of this court, and would not· have been tolerated; that by the bankrupt law, liens in existence at the time bankruptcy proceedings are commenced, are preserved without suit, and without any action by lien claimants, in the bankruptcy proceedings, equivalent to a suit; that the bankruptcy proceeding is a suit, though commenced by the bankrupt; that the proceedings throughout constitute but one suit, in which the bankrupt or the assignee is plaintiff, and all creditors and claimants are defendants; that thereby, all the property of the bankrupt is taken and held as a trust fund for the benefit of all creditors and lien claimants; that the provisions of the bankrupt law are designed to protect all such claimants, whether they hold their liens as security for a personal debt of the bankrupt or not; and that finally, the commencement of proceedings in bankruptcy, being the commencement of a suit to which all lien holders are parties, and as thereby a trust fund is created for their benefit, without any application to the bankrupt court to enforce the liens within the statutory period of limitation, the liens must be recognized throughout the entire bankruptcy proceedings, as they stood at the time the petition in bankruptcy was filed. It is to be first noticed, that none of these lien claimants are the personal creditors of the bankrupt; they were employed by and performed work for other parties who are their personal debtors; they are now asserting claims upon the bankrupt's property, upon which ·they performed the work, and which claims could have had no existence but for the provisions of a state statute. It is said that these claims could not be recovered or enforced by actions in the state court, as this statute provides; that if the claimants had resorted to such remedy before the bankruptcy proceeding was commenced, that proceeding would have arrested such suits, and if taken subsequently to the filing of the petition, the proceeding would have been in contempt of the authority of the bankrupt court. There are decisions in which the exclusive jurisdiction of the bankrupt court over liens upon the property of the bankrupt has been so strongly asserted, as to furnish some support to the proposition thus laid down by counsel for the lien claimants. In re Cook [Case No. 3,151] was a case where petitions were filed for the purpose of perfecting mechanics' liens in conformity with the state law, after bankruptcy proceedings were begun. Suits were then commenced against the bankrupts and the assignee in bankruptcy, to enforce the liens in the state courts. The district court for the western district of this state, upon the application of the assignee, stayed the suits and directed the property to be sold free of all liens of that character, and the proceeds to be paid into court.

Judge Hopkins in his opinion says, in relation to the right of parties thus situated to bring their actions in the state court after bankruptcy. proceedings commenced, for the purpose of asserting and enforcing such liens, that the bankrupt act provides for the protection of legal liens against the bankrupt's property, instead of destroying them, and that where a party has a lien, when the petition in bankruptcy is filed, but according to the requirements of the statute in order to continue it beyond a certain period, it is necessary to file a petition in the clerk's office, such party, having first obtained leave from the bankrupt court, would have the right to file such petition, and thereby. continue the lien, or if he does not file the petition in the clerk's office, but asks to have his rights established in the bankrupt court, that court should hold that as against property in the hands of an assignee in bankruptcy, it would not be necessary to file the petition in the state court to continue it. He holds also that the proceedings in that case having been commenced in the state court after the filing of the petition in bankruptcy, the parties by so doing were guilty of contempt of the authority of the court in which the bankruptcy proceedings were pending. It will be however, observed, that he says further, that a party having a claim, lien, or interest in the property in the hands of an assignee in bankruptcy, should apply to the bankrupt court for relief, and that court might grant the relief asked, or allow a suit to be brought even in the state court, to determine the same. This case is much relied upon by the lien claimants here as authority for the broad proposition that no proceeding could be taken in the state court after the filing of the petition in bankruptcy to enforce these alleged liens. I do not think the case goes to that extent. The supreme court of the United States in Eyster v. Gaff, 91 U. S. 521, have held, that where the foreclosure of a mortgage was begun in the state court before the bankruptcy proceedings were commenced, the state court having jurisdiction of the subject matter, and having acquired jurisdiction of the parties, has the right, notwithstanding the commencement of the bankruptcy proceedings, to go on with the foreclosure, and they hold that the jurisdiction of the bankrupt court, although very broad and comprehensive upon the question of liens on the bankrupt's property, is not under all circumstances absolutely exclusive, especially in a case where a proceeding has been taken in a state court to enforce the lien, before the commencement of proceedings in bankruptcy.

Justice Miller in his opinion says, that it was the duty of the state court in that case to proceed to a decree as between the parties before it. "The court had acquired jurisdiction of the parties and of the subject matter of the suit. It was competent to ad-

minister full justice, and was proceeding according to the law which governed such a suit, to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending. * * * The opinion seems to have been quite prevalent in many quarters at one time, that the moment a man is declared bankrupt, the district court which has so adjudged, draws to itself by that act, not only all control of the bankrupt's property, and credits, but that no one can litigate with the assignee, contested rights in any other court, except in so far as the circuit courts have concurrent jurisdiction; and that other courts can proceed no further in suits of which they had at that time full cognizance. * * * The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions. If it has for certain classes of actions conferred a jurisdiction for the benefit of the assignee, in the circuit and district courts of the United States, it is concurrent with and does not divest that of the state courts."

The effect of this decision is to practically overrule a number of decisions of the district courts of the United States, upon the question of jurisdiction as affecting the enforcement of liens. From the doctrine of this decision it follows that if suits had been commenced in the state court before the petition in bankruptcy was filed in this case, for the purpose of enforcing these liens under the state statute, the prosecution of such suits would not have been necessarily arrested by the commencement of bankruptcy proceedings. It might be, that under special circumstances, the bankrupt court would enquire into such proceedings and perhaps stay the parties who were prosecuting them, for the purpose of bringing them into this court, and here, rather than in the state court, settling the question as to the validity of these liens. However this may be, certainly after the bankruptcy proceeding was commenced, upon being advised that in order to preserve, keep alive and enforce these alleged liens, it was necessary that the parties should commence actions or take legal proceedings within a limited period, this court could, and assuredly would, have granted leave to the parties, either to have commenced actions as the state statute provides, or to make application to this court for the recognition, preservation and enforcement of their liens. In other words, this court could have authorized and sanctioned such a proceeding as would have been equivalent to the commencement of an action in the state court, for the enforcement of the liens. And the question here is, whether for preservation and enforcement of these liens, some step

equivalent to suit, should not have been taken by the lien claimants within the period fixed by the law creating the lien. It is true, that the language of the first section of the bankrupt law, upon the subject of jurisdiction and of the ascertainment and liquidation of liens, is very comprehensive. The question however, is, of what liens does this section speak? Here we have the case of liens deriving their existence purely and solely from a statute of the state, which provides, that unless certain acts are done by the parties within certain limited periods, their liens shall be suspended or shall lapse. Now, does the ascertainment and liquidation of liens, as contemplated by the bankrupt law, necessarily imply the absolute preservation of such statutory liens, in the absence of acts on the part of the lien claimants such as the statute prescribes, and that, too, when the continued existence of the liens is, by the statute creating them, made dependent upon such acts of the party asserting the liens?

The argument of counsel for these lien claimants is complete as addressed to the general power of the bankrupt court, over the property of the bankrupt, and as to not only the power but the duty of that court to recognize and enforce in the administration of the estate, all liens valid in their inception and continuing in their life. But it does not follow that the bankrupt law of its own vigor preserves the life of a lien which is created solely by state statute, when there are wanting such acts of the party as the statute requires to be done as a condition to the continued existence of the lien. It may be admitted that the commencement of bankruptcy proceedings is in a certain sense the commencement of a suit to which all the creditors of the bankrupt, secured and unsecured, and all lien holders, are parties, and that there is involved in the proceeding, the creation of a trust for their benefit; that the property is then in custodia legis, and that the rights of all lien claimants, as well as those of general creditors, should be respected. The question still remains, is a lien which derives its existence wholly from state statute, and the continuance of which is by such statute made dependent upon the commencement of a suit within a prescribed period, preserved as a valid living incumbrance upon the bankrupt's property, when no suit has been commenced in the state court, and no step taken in the bankruptcy court equivalent to such suit, within the time limited by the statute for the preservation and enforcement of the lien? Authorities are cited, and they are numerous, in support of the general proposition laid down by claimant's counsel, relative to the powers of the district court in the enforcement of liens. Among them is the case of In re Clark [Case No. 2,801], in which Judge Woodruff, in speaking of the first section of the bankrupt law says, "that language more comprehensive can hardly be suggested,

than is employed in the act giving power to collect all the assets, to ascertain and liquidate the liens and other specific claims thereon, adjust the various priorities, and marshal and dispose of the different funds and assets, so as to secure the rights of all parties. The entire estate is brought within the reach of these comprehensive powers, by vesting it in the assignee appointed by the court to administer 'it under the direction of the court. Nor can it make any difference with the power of the court over this subject, that the lien, or alleged lien, is inchoate and incapable of execution, until the amount secured thereby is ascertained and settled; ascertainment and liquidation are expressly authorized, and the subsequent provisions of the act relating to creditors having mortgages, liens and other security, show how fully the whole administration of the estate is confided to the court." Now if these lien claimants had in addition to filing their petitions, as the statute creating the liens required, commenced suits, or done that in this court which would be equivalent to suits for the enforcement and to prevent a lapse of such liens, so that they could be regarded as standing in the position of mortgagees or lien claimants, having subsisting, liens upon the property, then this. language of Judge Woodruff would forcibly apply, and within the powers conferred upon the bankrupt court, these liens could be recognized, the amount thereof ascertained and liquidated, and the whole question as between these lien claimants and the bankrupt, and the creditors of the bankrupt could be fully adjusted. The opinion of Judge Longyear in the case of Phelps v. Sellick [Case No. 11,079] embodies in a series of propositions, a very complete summary of the powers of the bankrupt court in the adjustment and enforcement of liens, and covers the whole question as to both secured and unsecured creditors. They are propositions that would embrace the question we have here, completely, if these lien claimants had done that which I think it essential that 'they should have done for the purpose of keeping their liens in existence. The Case of Eldridge [Id. 4,331] is also a case relied upon by the counsel for the lien claimants. Admit the full force of these authorities, still it does not necessarily follow that a lien liable to lapse from omission to do an act required to be done for its preservation by the statute creating it, is kept alive and continuing, by virtue alone of the commencement of the bankruptcy proceedings.

The fallacy of the position taken by the lien claimants, in part at least, lies here— that because the bankrupt act confers upon the bankrupt court extensive and even ample jurisdiction over the assets of the bankrupt, and all liens thereon, and because the bankrupt's property is made a trust fund to be applied in satisfaction of all such demands, claims and liens, therefore a statutory lien which is made dependent for its existence upon the conditions of the statute creating it, is preserved by virtue of the bankrupt law and of the commencement of bankruptcy proceedings—though those conditions or their equivalent be not complied with. I think there can be no doubt that these lien claimants could as an equivalent for commencing suits in the state court, have asserted or proved their liens in the bankruptcy proceedings, within the time limited by the statute creating the liens, but this was not done. To preserve a statutory lien dependent for its continued existence upon observance of the terms of the statute, those terms must be complied with by performance of the required act or its equivalent. The assignee, it is true, takes the property of the bankrupt subject to all liens thereon, but they must be kept valid and living liens. As counsel for the mortgage creditors has argued, the right of action in the federal court for the enforcement of these alleged liens, is subject to the limitations as to time, placed upon it by the statute creating the liens, and all lien creditors and claimants must, within the statutory period,. assert their claims, and have them adjusted. This statute requires affirmative action on. the part of the claimants in order to preserve their liens, and the filing of a petition in bankruptcy by the debtor, was not the commencement of a suit for the enforcement of these alleged liens, within the meaning of the law. The doctrine of trust, contended for here, accurately speaking, applies to creditors of the bankrupt who have provable debts against him; they hold debts which the bankrupt is under a legal and personal obligation to pay, and for the payment of which his estate is devoted, thereby creating a trust. But here, the bankrupt is not the debtor of these claimants. The claimants are in no sense his creditors; they have no interest in the general assets of the bankrupt; their claims are upon certain property, and such as can only be enforced on application within a prescribed period.

The creditors of a bankrupt are parties to the bankruptcy proceedings. In the first instance, they may petition for adjudication; they have a direct interest in the management of the estate, and must have notice of proceedings; they may control dividends and compositions. But the position of these lien claimants essentially differs from that of either secured or unsecured creditors of the bankrupt; they cannot institute bankruptcy proceedings against the person upon whose property they assert liens; they have no right to vote in the choice of an assignee, nor can they unite in the meetings of creditors; they cannot surrender their liens and become general creditors of the bankrupt; they hold merely a lien, which is the creature of a statute containing provisions, upon a compliance with which the continued ex-

istence of the lien is dependent. Suppose that after the filing of the petition in bankruptcy in this case, and while the four months limitation provided by this statute for the commencement of suits for the enforcement of the liens was running, the bankruptcy proceedings had been dismissed; what then would have been the position of these lien claimants? Or, suppose that composition proceedings had been taken, and the case had passed out of this court upon composition settlement; what then would have become of these asserted liens? In the case of Davis v. Anderson [Case No. 3,623] the court says: "The assignee may cite in the secured creditor, so as to determine what shall be done with respect to the security, and it may be advisable so to do, yet it is none the less the duty of the secured creditor to prove his demand, and obtain the aid of the court for its enforcement. If the lien creditor does not act, and the property is sold by the assignee under the order of the court, free from all liens and incumbrances, what recourse is left to the creditor after the fund has been fully distributed? If he thus sleeps on his rights, he does so at his peril." Now if this be true as a proposition applicable to a secured creditor of the bankrupt, does it not with equal and even superior force, apply to a party who is not a personal creditor of the bankrupt at all, but who is asserting a lien upon the bankrupt's property by virtue alone of a statute creating such lien?

The decision of the supreme court of this state in Bryant v. Small, 35 Wis. 206, bears upon the case at bar. That was a proceeding under the statute of Wisconsin, to enforce a mechanic's lien. The labor was performed and materials furnished between the 12th of November, 1872, and the 13th of March, 1873. The petition for the lien was filed on the 2d of May, 1873, and the action was instituted within the time prescribed by the statute. The owner of the building was adjudicated a bankrupt on the 15th of March, 1873. That was two days after the completion of the work, and before either the petition for the lien was filed, or suit was commenced. The suit to enforce the lien was commenced, it will be noticed, after the proceedings in bankruptcy were begun. "The defendants failed to answer, and the plaintiffs moved for judgment on the complaint. This was objected to by the defendants, on the ground that upon the allegations of the complaint, it appeared that the bankrupt court had exclusive jurisdiction of the lien proceedings, and the circuit court denied the motion for judgment, and dismissed the complaint for want of jurisdiction." An appeal was taken to the supreme court, and that court reversed the judgment of the court below. It was claimed by the defendants in that case, that the plaintiff had a full and complete remedy in the district court of the United States under the provisions of the bankrupt law, for the protection and enforcement of his lien, and that he should apply to that court for relief. The court says that it is possible that the lien would be enforced in the district court without any petition being filed or suit instituted in the state court, to preserve and continue it; but that it could not be assumed that such would be the construction of the bankrupt law, and that the district court might hold that the petition must be filed and the suit commenced in the state court within the time fixed by the statute, in order to continue and enforce the lien. The court in their opinion used this language, "There is certainly much reason for saying that the petition must be filed and action instituted in the proper court within the time limited, in order to preserve the lien, whether it is ultimately enforced in the state or federal court. At all events, we cannot see that it will likely lead to any embarrassment or conflict of jurisdiction, for the circuit court to retain the cause until the bankrupt court has acted upon the subject. This was the course pursued in Clifton v. Foster, 103 Mass. 233, and we can perceive no objection to the practice." Following these views, the court ordered the action brought in the state court to enforce the lien, stayed, to await the action of the district court in the bankruptcy proceedings. This is at least a recognition of the necessity for some action on the part of one claiming a lien under a state statute, in the shape of a legal proceeding for the enforcement of such lien, and of the necessity that such proceeding be instituted within the statutory period.

In the case of Firemen's Ins. Co. [Case No. 4,796], the facts were that a policy of insurance contained the usual provision that no suit or action against the company for the recovery of any claim by virtue of the policy, should be sustainable in any court of law or chancery, unless such suit or action should be commenced within twelve months next after the loss should occur. The insurance company was placed in bankruptcy. The insured had sustained a loss, but neither commenced an action in the state court to recover the amount of his loss, nor did he make any proof of his claim against the company in the bankrupt court, within twelve months after his loss occurred; and the question was, whether he could after the expiration of that period prove his claim in the bankrupt court and participate in the dividends. The court (Judge Blodgett) held "that if the loss had been duly and regularly adjusted in good faith before the company was adjudicated a bankrupt, the claim could be proved like any other debt without regard to the year clause of the policy; but if the proofs of debt were not submitted or acted upon until after the petition was filed in bankruptcy, I think, that while the assignee may examine and pass upon such proofs for certain purposes; he cannot make

an adjustment or agreement to pay, upon which an action could be maintained, and the assured, in order to preserve his claim, must not only present his proofs under the ninth clause, but must also make his proof in bankruptcy, as the substitute or equivalent for the commencement of a suit within twelve months under the twelfth clause." And he concludes that failure or neglect to make such proof, or bring suit within the time limited, bars the claim as effectually as failure to sue, if the company were solvent. So in analogy to the principle here stated, the failure of these lien claimants to present their claims or liens for recognition and enforcement to the bankrupt court, within the period limited by the statute, bars such claims as effectually as omission to bring suit if the bankrupt were solvent.

My conclusion is, that because of this failure either to commence a suit in the state court for the enforcement of these demands, within four months after the filing of petitions, or to do that in this court which would be equivalent to the commencement of such suits, namely, to present the claims to this court in these bankruptcy proceedings, within the four months, for recognition and enforcement, these liens must be said to have lapsed, and cannot now be recognized. The exceptions of the assignee and of the mortgage creditors, to the commissioner's report allowing these claims as liens upon the property in question, will be sustained.

NOTE [from original report]. On review, the foregoing decision was affirmed by [Circuit] Judge Drummond [unreported].