In re FALLS CITY SHIRT MFG. CO. et al.

(District Court, D. Kentucky. October 2, 1899.)

1. BANKRUPTCY—PRIORITIES—RANK OF LIENS.

Bankr. Act 1898, § 64b, cl. 5, giving priority of payment out of bankrupts' estates to "debts owing to any person who by the laws of the states or the United States is entitled to priority," does not operate to place all preferred debts of this class upon a plane of equality; but liens created by the laws of the state will attach to the property of a bankrupt in the hands of his trustee in the same relative rank and order in which they are fixed by the state statutes.

2. SAME—RIGHTS OF LIEN CREDITOR—PRACTICE.

An adjudication of bankruptcy brings the bankrupt's assets into the custody of the court of bankruptcy for administration; and a creditor of the bankrupt, having a lien on such property at that time, is not bound to follow the course of procedure prescribed by the state statute under which the lien arises, requiring certain action to be taken within a limited time for its preservation, but only to prove his claim as the bankruptcy law directs.

3. SAME.

Where a state statute (Ky. St. §§ 2487–2491) provides that, when the property of a manufacturing company shall come to the hands of a trustee or assignee for distribution to creditors, there shall be a lien thereon in favor of those who have furnished materials or supplies for carrying on the business, and directs that a claim therefor must be filed or suit brought to enforce the lien within 60 days, but does not expressly make the lien depend upon such action being taken, the lien will attach to the property of a bank-

rupt corporation upon the appointment and qualification of its trustee; and no proceeding to enforce the lien is necessary in the bankruptcy court, other than its proof as a secured debt, which may be done at any time within one year after the adjudication.

4. SAME—PROOF OF DEBT—AMENDMENT.

A lien creditor of a bankrupt, who inadvertently or by mistake proves his claim as an unsecured debt, may be permitted to amend his proof so as to save the benefit of his lien.

In Bankruptcy. On review of ruling of referee in bankruptcy.

George L. Everback, for John Glock, a creditor.

Strather & Gordon, for J. M. Robinson, Norton & Co., and other creditors.

EVANS, District Judge. The court is asked to review and reverse the ruling of the referee in this case upon two points, the first of which may be stated as follows: The adjudication was made on June 17, 1899, while the bankrupt was occupying the premises of John Glock at a monthly rental of $160. A claim for something over six months' rent was presented and allowed, and for $640 of it, covering the four months immediately preceding the adjudication, Glock, under section 2317 of the Kentucky Statutes, was allowed a priority, upon the ground that his lien to that extent was superior to liens claimed by certain material men under sections 2487 et seq. Those sections provide that when the property or effects of any manufacturing establishment, whether incorporated or not, shall come to the hands of any trustee or assignee for the benefit of creditors, or shall in any wise come to be distributed among creditors, whether by operation of law or by the act of such company, the persons who shall have furnished materials or supplies for the carrying on of such business shall have a lien upon such of the property, etc., as shall have been involved in such business, and all the accessories thereto, etc. It is also provided that such lien shall be superior to the lien of any mortgage or other incumbrance thereon "thereafter created." It is clear that the landlord's lien in this case was not created after, but was created before, the property of the bankrupts came into the hands of the trustee in bankruptcy. The landlord's lien was in existence June 17, 1899, at and before the adjudication; but the property of the bankrupts certainly did not come into the hands of the trustee until after that time, and probably not until July 3, 1899, when the trustee was appointed and qualified. Not until that event did the lien of the material men arise or exist. It is manifest, therefore, that the ruling of the referee upon this point was correct, unless, under clause 5, § 64, of the bankrupt act, all liens arising under the laws of the state are placed upon an even footing, regardless of priorities existing by virtue of the state laws. It is contended on behalf of the material men that such should be the construction of the bankrupt act, but the court is of a different opinion. Section 64 of that act, among other things, provides that debts shall have priority. and that the assets of the bankrupt shall be paid out in a certain order; the fifth in point of preference thereby fixed being "debts owing to any person who, by the laws of the states or the United States, are en-

titled to priority." The effect of the contention of the material men here would be that though all the creditors had liens created under the laws of the state, and though by those laws some of these liens had priority over others, still a proper interpretation of the bankrupt act would require a general leveling of these liens to a common plane, elevating some and depressing others, so as to destroy all advantage and all distinction given by the state laws. It cannot be admitted that such contention is sound. It seems to the court that it was obviously the intention of congress to recognize all liens created under the laws of the state, and to leave them precisely as it found them. There does not seem to be any evidence or plausible grounds of contention that congress meant to do anything so unjust or so unjustifiable as a contrary decision would involve. The plain intention of congress was to recognize liens and priorities thereunder precisely as the state laws had fixed them. In no other way could the priorities given by the state laws be made effective. In no other way could the debts "entitled to priority" under the state laws be preferred in the distribution of the bankrupt's assets. It results, therefore, that the ruling of the referee upon the claim of Glock, and by which he was given a priority in payment to the extent of $640, was correct. He was entitled to it under the laws of the state.

The second question is more difficult, and has received the careful consideration of the court. As already indicated, sections 2487 and 2488 give a lien to the material men only when the property goes into the hands of the trustee in bankruptcy, and ipso facto that event. In this case that occurred on July 3, 1899. This lien then became at once absolute and fixed. Under the laws of Kentucky it was then entitled to the priority also given to it by section 64 of the bankrupt act. On July 25, 1899, W. E. Thorn, executor of W. T. Garner, proved his claim as an unsecured debt; but on September 14th he amended his proof of debt, and stated the facts necessary to show that he stood on the footing of the other material men, and thereupon the referee admitted him to share the priority equally with them. It is contended that this was erroneous. Many decisions under the bankrupt act of 1867 permitted amendments of this character. Loveland, Bankr. § 138, and cases cited. This court recently took the same view of the question in Re Smith, at Covington. But counsel insists that under section 2491 of the Kentucky Statutes this creditor would have been bound, in order to retain his lien, to bring his action within 60 days, if there had been an assignment under the state laws, and that there must be something done in this court equivalent to that, such as making proof of the debt as a secured claim within the 60 days; and counsel insists that this view is established by the authorities, and cites the case of In re Brunquest, 4 Fed. Cas. 482 (No. 2,055). Under section 2316 of the Kentucky Statutes a lien is given a landlord for one year's rent, as against other liens, under the circumstances named in the section, "provided the same is sued on in 120 days from the time the rent is due." There the landlord's lien is expressly made to depend upon the proviso, namely, the bringing of the suit for the

rent within the time limited; but, in cases where the tenant had assigned for the benefit of the creditors before such suit was brought, the court of appeals, in actions where the assignee had sued to settle the estate, held that, as the property was thenceforward in the custody of the court, the landlord did not lose his lien by not suing within that time. Loth v. Carty, 85 Ky. 595, 4 S. W. 314; Petry v. Randolph, 85 Ky. 351, 3 S. W. 420. It will be seen that the case under consideration by no means calls for as strong a ruling as those last cited, and yet the court of appeals there overruled a contention similar to the one made in this case. It may therefore be assumed that they would construe in a similar way the sections of the statute giving liens to material men, and providing for their enforcement. The lien in this case is not given "provided" a suit is brought within 60 days, but by sections 2487 and 2488 it is given unconditionally, if the facts exist, as confessedly they do in this case.

In section 2491 is found this language:

"Suit must be filed to enforce the lien given by this article within sixty days from the date of the assignment or from the date when the property shall go into the hands of a receiver or trustee, or from the date when the business shall be stopped or suspended or the property is sold, or claims for which a lien is asserted must be filed within said time with the persons authorized to receive and report claims."

Precisely what result would follow a failure is not apparent, as it is nowhere provided that such failure shall defeat the claim, nor is it expressly made a condition of the continuance of the lien; nor, if it were, could it be determined precisely when the 60 days begun,—whether from the date of the assignment, or from the date when the business shall be stopped, or from the date when there should be a sale of the property,—though these alternative propositions may have reference to something much more clearly in the minds of the members of the legislature than they are in that of the court. But the obscurity of the statutory provision just quoted is by no means cleared up when we read in section 2495 that the liens created under this article of the statutes shall be enforced by proper proceedings within one year. By this section one year is expressly made the limitation of suits on all liens created under the article. Possibly some measure of this confusion may result from faults in compiling several acts, but it seems to the court that it cannot be erroneous, in cases like this, to liberally construe section 2491 in favor of the lien given by the statute, which, by fair implication, provides that suit may be brought within 60 days after any of the different events named in the section. Why should the shortest term be given, instead of the longest? There would seem to be injustice in not allowing the 60 days to run from that event which in order of time takes place last. In this case the last event to occur was the sale of the property, which is shown by the record to have been made on July 22, 1899, and which was less than 60 days before the amended proof of debt by Garner's executor was filed, on September 14th. So that if this be the true construction the amended proof was in time. But, going further, it may be proper to say that, notwithstanding the views expressed by Judge Dyer

in the Case of Brunquest, it seems to me that the correct rule is different. When the adjudication in bankruptcy is made the case is in this court. Unless as litigation already pending may affect the question, the bankrupt's assets are in the custody of this court, and are to be administered here. Rules of state law or practice which require things to be done there within a specified time yield to the rules here. This is especially so in this case, where the lien is not expressly destroyed by statute for failure to sue in 60 days, nor expressly made to depend upon that action. I think the true rule is that a lien of this sort, if it exist at the outset, can be asserted in this court precisely as long as proof of debt may be filed, viz. within one year, and with the same results, should there be delay until after the first dividend. When the case comes here the time for asserting claims is the time given, not by the state laws, but by the bankrupt law. The state laws give the lien eo instante the property comes to the hands of the trustee. The trustee takes the property subject to this lien, but the manner of enforcing that lien through the bankrupt proceedings is entirely different from, and independent of, the state laws. There is nothing in the bankrupt act to the contrary, though there is a clause giving effect to the existence of liens under the state laws. Especially is this true in a case like the present. Here there is not only doubt as to what is really the statutory period of limitation, but the existence of the lien is not by any express terms made dependent on the bringing of an action at all. The state undertakes to bar the remedy in her courts either within 60 days or 1 year,—it is difficult to say which,—but that is all. She cannot prescribe a rule for barring the remedy in the bankrupt court, when congress expressly or by inference has fixed another. This case may, indeed, be distinguished from the Brunquest Case upon several grounds, among them being: First, that the lien claimants in that case were not creditors of the bankrupt, but only of his subcontractors; and, second, that the Wisconsin statutes are very different from ours. But, even if the case could not be distinguished, I have heretofore, in the Smith Case, ruled the other way; and upon a reconsideration I am entirely satisfied with the former judgment, and especially upon the peculiar statute of Kentucky now under consideration. The ruling of the referee is approved and affirmed.