### In re DOWNING.

(District Court, W. D. Kentucky. November 18, 1905.)

1. BANKRUPTCY—EXEMPTIONS—LAW GOVERNING.

A bankrupt's right to exemptions is governed by the law of the state as construed by the state courts.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, §§ 664–670.]

2. SAME—KENTUCKY HOMESTEAD STATUTE.

Under Ky. St. 1903, § 1702, which, as construed by the state Court of Appeals, exempts a debtor's homestead if occupied by him in good faith "at the time an attempt is made" to subject it by execution, regardless of whether or not it was so occupied when the debt was contracted, if it was then owned by the debtor, a bankrupt is entitled to the exemption of property so occupied by him prior to the bankruptcy, as against a creditor who procured an attachment on the ground of insolvency before such occupancy, which was later levied on the property, but was dissolved by the adjudication by virtue of Bankr. Act July 1, 1898, c. 541, § 67, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], and the creditor proved his claim as unsecured debt.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 668.]

In Bankruptcy. On petition for review of referee's decision.

Clayton B. Blakey, for petitioner.

W. L. Porter and Geo. T. Duff, for bankrupt.

EVANS, District Judge. The petition in this case was filed February 15, 1904, and the adjudication was made on the same day. The petition for discharge was filed May 2d, and a discharge, without opposition having been made thereto, was granted on the 25th day of June, 1904. Upon this state of fact it might be said that under the ruling of the Supreme Court in Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, 10 Am. Bankr. Rep. 107, the matter had probably passed out of our jurisdiction, if the Louisville Tobacco Warehouse Company had acquired such a right to subject the homestead of the bankrupt to its particular debt as that creditor now contends for, though the right of the creditor, if any, might be defeated by pleading the discharge, which had been granted without opposition; the creditor not having asked for a postponement of the question of discharge until its right to a lien upon the homestead could be determined by the state court. But in the actual state of the

record different and more far-reaching rules are applicable. On the 27th day of April, 1904, the trustee in this case proceeded to set apart the homestead as exempt. He made no claim to it on behalf of the general creditors of the bankrupt. The Louisville Tobacco Warehouse Company took exceptions to this action, and insisted that the trustee ought, and moved that he be required, to administer it as part of the bankrupt's assets, upon the ground that the bankrupt was not entitled to a homestead in the land under section 1702 of the Kentucky Statutes of 1903. Exception was also taken to the action of the trustee in setting apart as exempt certain personal property; but this seems to be abandoned, leaving only questions as to the homestead to be determined. Under the express provisions of the bankruptcy act this determination must depend upon the Kentucky statute as construed by the state courts. In re Falls City Shirt Mfg. Co. (D. C.) 3 Am. Bankr. Rep. 437, 98 Fed. 592.

It is claimed, inasmuch as the bankrupt had been living for several years in adultery with the woman he married about the time of the attachment presently to be mentioned, and by whom he had had several children, that he was not entitled to the exemption; but the exact proposition was ruled adversely to this contention by the Kentucky Court of Appeals in Bell v. Keach, 80 Ky. 42. Section 1702 of the Kentucky Statutes of 1903 is in this language:

"In addition to the personal property exempted by this article, there shall, on all debts or liabilities created or incurred after the first day of June, one thousand eight hundred and sixty-six, be exempt from sale under execution, attachment or judgment, except to foreclose a mortgage given by the owner of a homestead, or for purchase money due therefor, so much land, including the dwelling-house and appurtenances owned by debtors, who are actual bona fide housekeepers with a family, resident in this commonwealth, as shall not exceed in value one thousand dollars; but this exemption shall not apply to sales under execution, attachment or judgment, if the debt or liability existed prior to the purchase of the land, or the erection of the improvements thereon."

In the case at bar, the title to the land appears to have descended to the bankrupt from his father some years before the adjudication in bankruptcy, but he only began his occupation of it as a home with his family on the 15th day of December, 1903. He has so occupied it ever since that date. He was married on the 12th day of December, 1903, to the woman with whom he had lived for years while his family was increasing and growing up. For some months previous to his marriage he had been intending and preparing to move to and live upon the land. On December 11, 1903, the Louisville Tobacco Warehouse Company instituted its action in the Monroe circuit court against the bankrupt to recover $1,469.06, claimed by it upon an indebtedness created in 1903, after the title to the land had devolved upon the bankrupt, and upon an allegation practically to the effect that the defendant was insolvent and without sufficient property to pay his debts obtained an attachment which, on December 12th, was placed in the hands of the sheriff, and was by that officer, on the 30th day of the same month, levied upon the land in question. No action was taken in the state court upon the attachment, though judgment in personam was rendered upon the claim on the 5th day of February, 1904. The

warehouse company proved its claim in this proceeding, not as a secured, but only as a general, creditor. It made no claim in its proof of debt to any lien on the land, either by virtue of its attachment or otherwise, and I think must consequently be held to have abandoned any such claim to a lien. This, however, should be regarded as not very material, because the attachment, having been obtained and permitted within four months of the adjudication in bankruptcy, and upon grounds which showed that the debtor was then insolvent, and which attachment, if sustained, would necessarily work a preference, was dissolved by the adjudication under the express provision of section 67 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]). In re Arnold (D. C.) 2 Am. Bankr. Rep. 180, 94 Fed. 1001. The warehouse company being, therefore, only a general creditor, only having that status, and not in its proof of debt insisting upon any lien under an attachment which, in contemplation of law, was dissolved by the adjudication, the question of the right of the bankrupt to have the land exempt as a homestead is much simplified. In Nichols v. Sennitt, 78 Ky., at page 632, the Court of Appeals fixed the test to be applied in cases like the one before us in this language:

"We will not stop to inquire how far the decisions in the states mentioned are authority here by reason of the similarity of the statutes, because it appears to us that the homestead statute in this state is subject to but one construction, and that is that, if the land was purchased or the improvements made prior to the creation of the debt, the homestead right attaches when the claimant is in occupancy as a housekeeper in good faith at the time the attempt is made by execution to subject the land. The clause of the statute giving the homestead is general in terms, allowing the exemption to all bona fide housekeepers with families, and without reference to the time at which the homestead may have been created by actual occupancy."

The proof of debt of the warehouse company was presented to the referee and allowed on April 30, 1904, and any lien under the attachment, by operation of law, having previously been dissolved, this proof of its debt must be regarded as the first appearance of the warehouse company in this proceeding. The trustee set apart the homestead on the 27th day of April, 1904, and the warehouse company made its objections thereto on the 30th day of the same month. These last steps, it appears to us, must be regarded as the beginning of the attempt of the warehouse company to have the homestead subjected to the debts of the bankrupt, and, as the occupancy of the land by the bankrupt with his family began in December previous, the bankrupt clearly appears to be entitled to the homestead under the rule in Nichols v. Sennitt, above cited. We see no escape from this conclusion.

Besides, it might be that while a general attachment was issued from the state court on December 11th, 1903, and placed in the sheriff's hands on the 12th, still such process was not necessarily to be levied on exempt property, but only on property not exempt, and the issuing and placing in the sheriff's hands of the attachment may not, per se, have been the beginning of the attempt to make a claim upon exempt property within the purview of the rule in Nichols v. Sennitt. Not until December 30th, when the attachment was in fact levied upon the homestead, might the creditor be regarded as actually asserting a

claim upon exempt property. But, meantime, on the 15th of the same month, the bankrupt, with his family, had moved upon the land and begun to occupy it as a homestead. We incline to think, though it is not necessary to say more in view of what has been previously said, that the Court of Appeals of the state would hold that there was no actual attempt to subject the homestead until the attachment was in fact levied on December 30th, and that, as at that time the property was occupied by the bankrupt and his family as a homestead, he was entitled not to be disturbed.

At all events, from what has been briefly stated, it results that the petition for a review must be dismissed.