In re MT. WASHINGTON S. S. CO., Inc.
No. 4649.

District Court, D. New Hampshire.
Feb. 6, 1942.

Dudley Orr, of Concord, N. H., for trustee.

Bingham, Dana & Gould, of Boston, Mass., Robert V. Johnson, William W. Keller, F. E. Normandin, James W. Doherty, Harold E. Wescott, and Wayne M. Plummer, all of Laconia, N. H., and Kenneth F. Graf, of Manchester, N. H., for creditors.

MORRIS, District Judge.

This matter came before me on petitions for review, two questions being involved: one, when the vessel Mount Washington 11 was completed within the meaning of the law relating to liens, and the other, whether or not the vessel was subject to taxation for the year 1941 in the hands of the trustee.

Upon the determination of these questions depends the distribution of the assets.

A preliminary statement of the facts leading up to the petition in bankruptcy will be helpful in the determination of the questions involved.

The Mount Washington 11 was purchased in the spring of 1940 by Captain L. LaVallee from the trustee of the Champlain Transportation Company for the sum of $20,000, paying part in cash and giving a mortgage for the balance of the purchase price. At the time of the purchase the vessel was in

178

Shelburne Harbor, Vt. The hull was towed to a marine railway in Vermont, broken up, transported to Laconia and there reassembled. It was designed to be used as a pleasure boat for the carrying of passengers on Lake Winnipesaukee.

In June 1940 the Mount Washington Steamship Company, a New Hampshire corporation, was formed. It purchased the vessel and rights of wharfage from Capt. LaVallee and certain of his obligations were assumed by the corporation in its purchase. Thereupon work on the vessel was continued by the corporation and large debts were incurred for labor and materials.

The corporation issued and attempted to sell stock but was not successful in obtaining enough funds to defray the expenses incurred.

August 11, 1940, the boat was launched and operated on Lake Winnipesaukee under a certificate of the New Hampshire Public Service Commission which contained certain conditions and changes to be made in the vessel and its equipment. At the time the vessel was launched the company was out of funds and it was hoped that something could be realized from operating the boat during the short season remaining. It was decided to try out the boat in the water to see if certain expenses could be avoided by eliminating contemplated additional work and materials. At the close of the season of 1940 which ended in September, the boat was laid up at the wharf until the spring of 1941. In the spring of 1941 the trustee of the Champlain Transportation Company took possession under his mortgage and had keepers in charge for several weeks. During the time the boat was laid up at the wharf work was practically suspended. Efforts were made to secure funds for further work on the vessel but were unsuccessful and an involuntary petition in bankruptcy was filed March 26, 1941.

After the first meeting of creditors in this proceeding the vessel and wharfage rights were sold at public auction to the General Ship and Engine Works, it being the largest creditor, for $30,000.

Certain creditors claim liens for work and labor on the vessel and these claims were transferred to the proceeds of the sale. Their liens were allowed by the referee and will absorb all the proceeds of the sale leaving nothing for the general creditors and only a dividend for lien creditors.

Various attachments, some of them lien attachments and others common attachments, were made on the vessel prior to its sale to the General Ship and Engine Works.

In determining the validity of the liens and other attachments it is necessary to determine the date of completion of the vessel. Many hearings were had before the referee and much evidence taken which it is not necessary for the Court to review as the referee had found as a fact and ruled as a matter of law that the vessel was not completed at the time of filing the original complaint.

Counsel who have sought a review of the referee's findings challenge both the finding of fact and ruling of law as to the completion of the boat. Number 47 of the General Orders in Bankruptcy, 11 U.S.C.A. following section 53, provides that, "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous."

The referee in his report has enumerated some of the principal particulars which were necessary for the completion of the boat. He also calls attention to the testimony of several witnesses sustaining his findings.

I cannot say that the finding of the Referee that the boat was not completed March 26, 1941, the date of the filing of the petition in bankruptcy is clearly erroneous.

The ruling as a matter of law stands differently. It has been argued that the boat was completed as affecting liens at the time it was launched, August 11, 1940. The Referee finds that the owners were out of funds at the time and it was hoped that something could be realized from operating the boat during the short season remaining and it was decided to try it out to see if certain expenses could be avoided by eliminating contemplated additional work and materials. The certificate granted by the Public Service Commission was for temporary operation. The Referee found that while the boat could operate after a fashion it was not fit for the use contemplated when it was remodeled and could not be a commercial success in its then condition.

In seeking a ruling that the boat was completed when it was launched the petitioners for review rely upon the case of Manchester & K. Railroad v. Keene, 62 N.H. 81. In

that case it appears that the City of Keene made a grant of money to the Manchester & Keene Railroad, then in process of construction, to be paid when the road was completed for use from Greenfield to Keene. Payment was resisted and litigation followed. Facts were found by referees which disclosed that only eleven miles of fencing had been completed; that no depot had been constructed at Harrisville; no turn-tables or other terminal facilities had been provided; no ballast between the ties for long distances and at some points ties were not tamped and the track was somewhat out of line on approaches to trestles. The referees found that the railroad was reasonably safe, fit and convenient for the public use and accommodations as new railroads are ordinarily used in similar locations.

On motion to set aside the report of the referees the Court held that there was no error of law in the standard of completion adopted by a majority of the referees.

Adopting the ruling of the Court in the above-entitled case it is argued that when the Mount Washington 11 was launched it was substantially completed within the meaning of the New Hampshire Statutes applicable to liens.

Section 11 of Chapter 217 of the Public Laws of New Hampshire provides that a person who by himself or others performs labor or furnishes materials toward the building, repairing, fitting or furnishing a vessel within the State of New Hampshire payment for which is due, shall have a lien thereon on the vessel for the space of four days after it is completed. Section 20 of the same chapter provides that any such lien may be secured by attachment of the property upon which it exists at any time while the lien so continues.

By the terms of the above-quoted statute the lien of materialmen and workmen continues for the space of four days after the boat is completed. The word "completed" means nothing less than that the last work performed is finished and in this respect the instant case differs from the Keene case wherein the money was to be paid when the railroad was completed *for use*. In that case the referees and Court were interpreting the words "for use" and did not assume to interpret the meaning of the word "completed" standing alone as it does in the New Hampshire statute.

The referee finds as a fact that the Mount Washington 11 was not completed within the meaning of the New Hampshire lien law when the original petition in bankruptcy was filed and as a matter of law his ruling is the same.

Some persons doing particular jobs towards the construction of the boat perfected their liens by making attachments prior to the proceeding in bankruptcy. Other parties claiming liens made no lien attachments but waited until after bankruptcy had intervened asserting a lien when they proved their claims. It is argued that the latter have lost their liens unless such claims were made within four days of the filing of the petition in bankruptcy. I cannot so hold. Upon the filing of the bankruptcy petition the boat was in custodia legis and suits of attachment could not then be filed. Persons claiming liens against the boat who had not perfected their liens by attachment because the time had not expired for so doing before the bankruptcy petition was filed had a right to prove their claim including claims for liens after bankruptcy intervened, and they were not required to do so within the first four days after the bankruptcy petition was filed.

An adjudication of bankruptcy brings the bankrupt's assets into the custody of the court of bankruptcy for administration and a creditor of the bankrupt having a lien on such property at that time is not bound to follow the course of procedure prescribed by the state statutes under which the lien arises requiring certain action to be taken within a limited time for its preservation but only to prove his claim as the bankruptcy law directs. In re Falls City Shirt Mfg. Co. et al., D.C., 98 F. 592; Section 67, sub. b. of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. b.

We now come to the question of taxes. The City of Laconia assessed a tax of $1,260 against the trustee as of April 1, 1941, which was disallowed.

Chapter 60, Section 14 of Public Laws of N. H., provides:

I. "for purposes of taxation * * * fishing vessels, steamboats, horse-boats or other vessels owned by individuals and navigating the waters of this state for the transportation of passengers or freight, and sea-going vessels, shall be deemed stock in trade, except as provided in Section 20, and in Chapter 61, section 15."

II. "Boats. All boats and launches of every description, in excess of the aggre-

gate value of one hundred dollars, and not included in stock in trade."

There is nothing in the above-quoted statute that indicates a tax is assessable on a vessel which is in the process of construction. If taxable at all, it was taxable only as stock in trade, as a vessel "navigating the waters of this state for the transportation of passengers or freight" for which it was designed and the only use made of it was a few trial trips carrying passengers.

Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, limits the taxes to the value of the property received by the trustee. The taxes are those "legally due and owing by the bankrupt" while the proviso states that no order shall be made for payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein.

█ The referee has found that the value of the vessel does not exceed the amount of the liens existing thereon at the date of the bankruptcy and that there is nothing in the bankrupt estate for the general creditors, therefore, it would appear that there is nothing to tax or at least no tax was payable by the trustee under the provisions of 64, sub. a of the Bankruptcy Act.

Counsel for the city attempts to avoid the effect of this statute by claiming that the tax was properly assessed against the trustee instead of the corporation and it therefore falls within the class of current expenses of administration having a preference over all existing liens.

It appears that the trustee never operated the boat and it does not appear that he was ever authorized to operate it. He merely sold the boat at auction as it was when he took it over.

█ I hold that the tax assessed as of April 1, 1941, four days after the bankruptcy petition was filed, is not a current expense of administration.

The New Hampshire statute relating to taxation of personal property does not provide for a lien thereon until distraint. by the collector. Under the Bankruptcy Act taxes are subordinated to the payment of liens, and as the liens on the vessel amount to more than its value, the question of taxes becomes merely academic.

## Rulings of Law.

I rule as a matter of law that the Referee's findings of facts are based upon substantial evidence and are therefore not open to review by the Court.

I rule as a matter of law that the word "completed" as used in the New Hampshire Statutes is not susceptible of degrees of completion.

I rule as a matter of law that lienors were not required to perfect their liens within four days after the filing of the petition in bankruptcy.

I rule as a matter of law that the vessel was not taxable until completed.

I rule as a matter of law that any tax assessed on the vessel is subordinate to the liens and therefore cannot affect the distribution of assets.

I rule as a matter of law that the tax assessed as of April 1, 1941, four days after the filing of the petition in bankruptcy is not to be classed as an expense of administration.

It follows that the rulings of the Referee that the vessel Mount Washington 11 was not completed when bankruptcy intervened and that the vessel was not subject to taxation for the year 1941, are affirmed.