## In re MYERS et al.

(District Court, D. Indiana. February 19, 1900.)

### No. 433.

1. BANKRUPTCY—PROOF OF DEBT—AMENDMENT.

A court of bankruptcy has discretionary power to allow a proof of debt against the bankrupt's estate to be amended, and will generally grant leave to amend, in cases of mistake or ignorance of law or fact, in the absence of fraud, when justice seems to require that the amendment should be made, and when all parties can be placed in the same situation they would have occupied if the error had not occurred.

2. SAME.

Where a bankrupt had money on deposit in a bank, and was indebted to the bank on promissory notes for a larger sum, and the cashier of the bank made proof against the bankrupt's estate for the entire amount of the notes, omitting, through mistake or forgetfulness, to offset the amount of the deposit, held, that the bank should be permitted to amend its proof so as to retain the amount of the deposit, credit the same on the notes, and prove a claim for the balance.

3. SAME—SET-OFF OF MUTUAL DEBTS.

Under the provisions of the bankruptcy law relating to the set-off of mutual debts, money on deposit in a bank to the credit of a bankrupt may be set off against the indebtedness of the bankrupt to the bank on promissory notes.

4. SAME—RESTORATION OF FUNDS.

Where a bank held money on deposit to the credit of a bankrupt, and, on his order, transferred the account on its books to the name of the receiver appointed to take charge of his estate, and afterwards to the name of the same person as trustee in bankruptcy, but with no actual payment of the money nor any change in its possession, held that the bank, being entitled to retain the amount of the deposit as a set-off against notes of the bankrupt which it held, might deduct the amount thereof from the funds of the estate placed on deposit with it by the trustee in bankruptcy.

In Bankruptcy. On review of decision of referee in bankruptcy on petition of First National Bank of Crawfordsville for leave to amend proofs of debt.

Baker & Daniels, for petitioner.

Bamberger & Feibelman, for trustee in bankruptcy.

BAKER, District Judge. On December 18, 1899, Noah E. Myers and Julius L. Charni were adjudged bankrupts by this court on their own petition. On the same day the matter was referred to Henry H. Vinton, a referee in bankruptcy for the Eighth district of Indiana. On December 21, 1899, Henry Campbell was, on the petition of certain creditors, duly appointed receiver of all the estate of the bankrupts, and on the same day said Campbell qualified as such receiver by giving bond and taking the proper oath of office. At the time said Myers and Charni were adjudged bankrupts they had on deposit in the First National Bank of Crawfordsville, Ind., the sum of $777.66, and said bankrupts were then indebted to said bank for borrowed money evidenced by notes not then due in the sum of $5,000. On the 22d day of December, 1899, said bankrupts presented to the First National Bank of Crawfordsville a receipt acknowledging that they had received the sum of $777.66 to be charged to their account, and ordered the said sum of money to be transferred on the books of the bank from the account of Myers and Charni to that of Henry Campbell, receiver. At the first meeting of creditors, on the 4th day of January, 1900, said Campbell, receiver, was duly elected trustee in bankruptcy, and said sum of $777.66 was on the 5th day of January, 1900, transferred on the books of the bank from his account as receiver to his account as trustee. On the 4th day of January, 1900, the First National Bank of Crawfordsville, by James E. Evans, its cashier, filed the proof of its claim against said bankrupts in the sum of $5,000, which was duly allowed by the referee. At the meeting when said Campbell was elected trustee of the estate of the bankrupts, the bank voted said $5,000 for said Campbell for trustee, but no other person was nominated or voted for as trustee, and the vote of said bank did not in any wise affect the result. From the time that the petition in bankruptcy was filed down to the present time the said sum of $777.66 has remained in the possession of the First National Bank of Crawfordsville, and the only change that has been made in the disposition of said sum is the mere bookkeeping change of the amount from the account of Myers and Charni to Campbell as receiver, and from Campbell as receiver to Campbell as trustee.

On the 18th day of January, 1900, the First National Bank of Crawfordsville filed its verified petition with the referee, praying that it might be permitted to withdraw and amend the proofs of its claim by stating therein the amount of said deposit due from it to said bankrupts, and deducting the same from the amount of its said claim, and that it be permitted to amend said proofs by stating therein the amount of said debt to said bankrupts, to wit, $777.66, as a set-off against its said claim and demand, and that it be permitted to prove the residue, to wit, $4,222.34, as its claim, and that it be permitted to withhold and deduct said sum of $777.66 from and out of the sum of

$3,625.49 then on deposit in the petitioners' bank to the credit and in the name of Henry Campbell, trustee, and that said Campbell, as trustee, be ordered and directed to allow the petitioner to deduct said sum of $777.66 out of the amount of $3,625.49 standing to his credit on the books of the bank. The petition of the bank, verified by its cashier, shows that he was suddenly called upon to make proof of the claim of the bank against the bankrupts' estate, and that in making said proof he forgot and overlooked the fact that the petitioner was indebted to said bankrupts in said sum of $777.66, then on deposit in said bank to the credit of said bankrupts, as shown by the books of the bank.

On hearing this petition, the referee found the facts to be substantially as stated above, but was of opinion that the bookkeeping entries made on the books of the bank, as above stated, were equivalent to the actual payment of the amount owing by the bank to the bankrupts with full knowledge of the facts, and operated as an abandonment and waiver by the bank of all right to set off mutual debts.

The bankruptcy act provides that, in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated, and one debt shall be set off against the other, and the balance only shall be allowed or paid. A deposit in a bank becomes, upon the bankruptcy of the depositor, a security for, and payment pro tanto of, his liability to the bank by the operation of the law of mutual credits. The court undoubtedly possesses the power, in its discretion, and in a proper case, to allow proofs of debts to be amended, and in case of mistake or ignorance, either of fact or law, will generally exercise that power, in the absence of fraud, and when all the parties can be placed in the same situation that they would have been in if the error had not occurred, and where justice seems to demand that the amendment should be made. This would seem to be such a case. The bank was entitled to retain the amount on deposit to the credit of the bankrupts, and apply the same upon the indebtedness of the bankrupts to the bank. The changes made in the account touching the deposit, originally standing in the name of the bankrupts, have wrought no change in the actual possession of the money on deposit. It has at all times since the bankruptcy occurred remained in the control and possession of the First National Bank. If the other creditors of the bankrupts should be held to be entitled to participate in this fund, they would receive, to that amount, so much more than in equity and good conscience they were entitled to. By allowing the bank to retain the sum of $777.66, the general creditors of the bankrupts will not be injured.

As was said in the case of Oil Co. v. Hawkins, 20 C. C. A. 468, 74 Fed. 395, 33 L. R. A. 739:

"Restoration for diversion of funds, whether from design or through mere error, is not to be denied, unless the diversion has occurred through the wrong or error of the party seeking restoration, and when, in the case of error, there has been wrought legal detriment to the opposing right. This is certainly true with respect to trustees and officers of the law, who are not permitted to assert a mere mistake of law as an excuse for the denial of justice, and who are required to act as any high-minded man would under the like circumstances."

In Ex parte James (In re Condon) 9 Ch. App. 609, a creditor had obtained judgment, and issued execution, which was levied by the sheriff upon certain personal property of the defendant, and upon its sale the proceeds were paid to the judgment creditor. Thereafter, the debtor being adjudged a bankrupt, the assignee demanded the proceeds of the sale. The judgment creditor, supposing the assignee entitled thereto, paid over the same to him. Being afterwards advised that he had a right to retain the money, the creditor filed a petition against the trustee in bankruptcy for restoration, and restoration was decreed. The court observed that:

"A trustee in bankruptcy is an officer of the court. He has inquisitorial powers given him by the court, and the court regards him as its officer, and he is to hold money in his hands upon trust for its equitable distribution among creditors. The court, then, finding that he has money in his hands which in equity belongs to some one else, ought to set an example to the world by paying it to the person really entitled to it. In my opinion, a court of bankruptcy ought to be as honest as other people."

The case of Oil Co. v. Hawkins, supra, was one where the company, on the day and within a few minutes of the closing of the bank, in ignorance of the insolvent condition of the bank, and believing it to be solvent, deposited in the bank the sum of $1,746.71, consisting of a small amount of money, and the balance in checks and drafts and other evidences of debt. The company filed proof of its claim against the insolvent bank with the receiver as a general claim entitled to no preference. The receiver allowed such claim, with others, which he reported to the comptroller of the currency, where said claim, with others, was entered upon the books of the comptroller of the currency. A dividend was declared among the several creditors of the insolvent bank, including the Standard Oil Company, and the money so received by the bank, with other moneys in the hands of the receiver, was paid out upon the dividends so declared. A check for the amount of its dividend was forwarded to, and received by, the Standard Oil Company, which check, shortly after its receipt, was returned to the receiver. Thereupon the Standard Oil Company filed its claim with the receiver, asking to be allowed to establish its claim as one entitled to be paid in preference to the general creditors of the insolvent bank, and the circuit court of appeals for this circuit held that it was entitled to such payment out of other assets of the bank in the hands of the receiver. This case carries the equitable doctrine of allowing a restoration, where no injustice will be done, to a much greater length than is necessary in the present case. For these reasons the court is of opinion that the decision of the referee should be reversed, and the referee directed to permit the credit to be made, and the amended proofs filed and allowed, as prayed for by the petitioner.