## In re FISK & ROBINSON.

### Ex parte J. P. MORGAN & CO.

(District Court. S. D. New York. March 14, 1911.)

1. EXCHANGES (§ 9*)—CONSTITUTION—CONSTRUCTION—INTEREST OF MEMBERS—LIABILITY FOR DEBTS.

New York Stock Exchange Constitution, art. 22, providing that the interests of brokers, members of the exchange, in their seats, with the right to do business on the exchange, shall be subject in case of failure to claims due other members of the exchange, includes any loan between members which is of a business character, though made pursuant to dealings off the floor of the exchange for the personal interest of the brokers participating, and is not limited to loans between brokers as such for the account of clients.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. §§ 12, 13; Dec. Dig. § 9.*]

2. BANKRUPTCY (§ 364*)—DEBTS—SECURITY—WAIVER—FILING CLAIM.

The filing of a claim against a bankrupt's estate and the receipt of dividends thereon is a waiver of the creditor's security, and this whether the claims to security arise in a bankruptcy court or out of it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 504; Dec. Dig. § 364.*]

3. BANKRUPTCY (§ 336*)—CLAIMS—AMENDMENT—SECURITY.

Where an original claim was filed against a bankrupt's estate within the time required, the referee, though after the expiration of a year from adjudication, may permit an amendment of the claim before the claimant has received a dividend, so as to correct a waiver of security.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 523; Dec. Dig. § 336.*]

In the matter of Fisk & Robinson, bankrupts. On petition to review referee's order with reference to the claim of J. P. Morgan & Co. Order reversed, and claimant's petition denied, conditionally.

William C. Armstrong, for petitioners.

Francis Lynde Stetson, for respondents.

HAND, District Judge. The facts are fully set out in the decision of the referee, and they are not in dispute. Two points only are raised: First, did the constitution of the New York Stock Exchange cover the debt in question? Second, did the filing of a claim in bankruptcy, without asserting the security, waive the petitioner's rights?

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I have no doubt that the constitution (article 22) covered this transaction. The theory of the trustee is that only loans between brokers, qua brokers, fall within it, and, of course, he must concede that it is immaterial where the loan is made. Consistently, therefore, no debts for the purchase or sale of stocks made on the floor of the exchange can be covered, if the broker is acting for himself; at least no such transactions are covered, if it is known that the broker is acting for himself. That is a most unreasonable assumption, because the contracts of members for themselves are wholly unsecured anyway; they have not even the problematical, but possible, security of a customer behind them. It would only be a perverse distinction to secure the liabilities already secured, and not to secure those wholly unsecured. Now, it is matter of common knowledge that many stock transactions take place between brokers on their own account, and it would be an absurd construction of the article in question to say that when dealing on the floor of their exchange in respect of sales, known to be personal between them, the members did not suppose that the seller had the same security as though the purchase was made for a customer. It is safe to say that all such floor transactions are regarded as upon an equality, and that the persons concerned would regard it as quite fantastic to be told that they were secured only in respect of transactions for customers. No body of merchants and traders would for a moment entertain such a distinction, and in matters of commercial law the courts have usually been successful in proportion as they accepted the common understanding of the commercial community as to the meaning of their contracts. But, if once it be conceded that any contracts undertaken individually are covered, the trustee's case disappears, for it depends wholly upon the theory that all but broker's contracts as such are outside the business of the Stock Exchange. If the rule be not universal, it does not exist at all, and the words ought to have effect in their natural meaning, which covers any loan of money. I have no doubt that it does cover any loan between members which is of a business character. It is not necessary to go further here.

The second question relates to the waiver of the lien by presenting a claim to the referee without asserting the lien. Thereafter the claimant filed an amended claim, without leave. It is quite true that to file a claim is to waive security (Ansonia Brass & Copper Co. v. Babbitt, 74 N. Y. 395), for one may not collect dividends upon the whole debt and then take security upon a part. The rule is similar to that which confines a broker's customer to his election between his claim and his stocks. Re Berry, 174 Fed. 409, 98 C. C. A. 360. Had the claimant actually received dividends, the question would be clear. Nor does it matter, I think, that the funds are separate, as the referee suggests; for the waiver operates, whether the claim to the security arises in the bankruptcy court or out of it. Ansonia Brass & Copper Co. v. Babbitt, supra. It is enough that the claimant should have elected not to assert his security, and that election would be signified by going ahead upon a claim for full dividends.

The claimant at the argument asked me to put myself in the place of the committee on admissions of the New York Stock Exchange, and consider whether they would have regarded the claim as a waiver. If the rules of law require it, I suppose they would have so regarded it; if not, they would be acting illegally, and that I shall not assume. If, for example, the claimants had expressly waived their claim, of course, the committee would not have forced it on them. If they had taken a full dividend, the committee could not honestly have given them the money. As the matter stands, the amendment being as yet unauthorized, they are claiming full dividends. Whatever the committee would in·fact have done, the question is what they ought to do in such case, and that I am satisfied is to refuse to pay anything to the claimants while they continued to claim dividends on the whole claim.

However, under all the authorities, they may be allowed to amend, at least before receiving a dividend, and the amendment would have the effect of reinstating the security, as it fairly ought. Ansonia Brass & Copper Co. v. Babbitt, supra; In re Myers (D. C.) 99 Fed. 691; In re Wilder (D. C.) 101 Fed. 104; In re Falls City Shirt Mfg. Co. (D. C.) 98 Fed. 592, 594; In re Hubbard, Fed. Cas. No. 6,813. In the case at bar they did file an amended claim, which, had it been previously allowed, would have corrected the waiver, and made valid the security. It is not too late now to apply to the referee for an order nunc pro tunc, authorizing the filing of that amendment as of the date when the amended claim was actually filed; for that may be more than a year after adjudication, if the original be in season. While in view of the referee's decision this may be regarded as a mere formality, still the trustee has not had his day in court upon the proposition of whether the claimants should be allowed to amend. In the case of an unperfected lien, Judge Brown once refused such an amendment (Re Wilder, supra), and until the referee, in whom the discretion is lodged, exercises it, I cannot as matter of law say whether the amendment is properly allowable or not.

If the referee allows the amendment, I will dismiss this petition of review and affirm this order. If, on the other hand, he denies leave to file the amendment, this order must be reversed, and·the claimants' petition denied. No order will be entered herein, till the decision upon that proceeding, provided the claimants act expeditiously.