## BANK OF SEARCY v. MERCHANTS GROCER COMPANY.

### Opinion delivered April 24, 1916.

1. LIENS—CORPORATION'S LIEN ON STOCK—PARTNERSHIP DEBT.—A corporation has a lien on its stock for the debt of a partnership, where the stock is the property of one of the partners.

2. BANKRUPTCY—ELECTION.—An election by a creditor to appear as an unsecured creditor constitutes an abandonment of security held by the creditor.

3. BANKRUPTCY—SECURED CLAIM.—Under the bankrupt statute a claim is not deemed to be secured, unless it constitutes either directly or indirectly a lien on the property of the bankrupt estate.

4. BANKRUPTCY—SECURED CLAIM—COLLATERAL SECURITY.—The fact that a debt is secured collaterally does not make it a secured claim within the meaning of the Federal statute.

5. BANKRUPTCY—COPARTNERSHIP—ESTATES OF MEMBERS.—The adjudication of the bankruptcy of a copartnership necessarily draws to it the estates of the individual members of the copartnership.

6. BANKRUPTCY—PARTNERSHIP DEBT—PERSONAL SECURITY—ELECTION.—A copartnership creditor who holds security from the individual members of the firm, is not put to an election when he comes to prove his claim against the estate of the partnership, and he does not have to surrender his security before he can prove his claim. He may collect his dividend and then proceed against the security for the balance.

7. BANKRUPTCY—STOCK LIEN—PARTNERSHIP DEBT.—P, a member of a copartnership, owned stock in the M. company; the copartnership became indebted to the M. company, and thereafter P. undertook to assign said stock to S. The copartnership became bankrupt, and the M. company proved its claim and received dividends in the estate as an unsecured creditor. Held, under the facts the M. company was entitled thereafter to enforce its lien on the said stock, and that S. was not entitled to a transfer to it of the same.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Brundidge & Neelly,* for appellant.

1. When the appellee filed its claim in bankruptcy and accepted dividends as such it waived any lien it had upon the stock pledged to the bank. 9 Fed. 371; 5 *Id.* 55; 217 *Id.* 20; U. S. Law Ed., volume 26, p. 1042; 69 Ark. 271. Appellee made its election of remedies and is bound thereby. U. S. 39 Law Ed. 62; 115 N. Y. 387,

393-4; 5 Metc. 49-51; 111 Mass. 272; 174 Fed. 409; 209 U. S. 385; U. S. 33 Law Ed. 705; 94 Fed. 631; 74 Id. 398; 78 Ark. 569; U. S. 11 Law Ed. 238; 219 Fed. 421.

2. Appellee is estopped from claiming a lien by the acts of its agent and treasurer. 101 Ark. 580; 112 Id. 180.

*Moore, Smith, Moore & Trieber,* for appellee.

1. Appellee had a lien upon Mrs. Petty's stock to secure the firm indebtedness. Kirby's Digest, § 6010; 6 Ark. 24; 21 Id. 186; Ib. 411; 19 Id. 701; 4 Id. 164; Kirby's Digest, § 853; 4 Thompson on Corp., § 4010; 69 N. W. 663; 43 S. W. 407; Fed. Cases, No. 1395; 68 Ark. 234. This corporate lien is prior to all others. 4 Thompson on Corp., § 4003; 68 Ark. 234; 3 R. C. L., § 24.

2. It did not waive this lien by filing its claim in bankruptcy. 3 R. C. L. § 47; 65 Ark. 290; 136 Fed. 165; 97 Id. 771; Collier on Bankruptcy, p. 724; 12 Fed. Cas. No. 6750; 169 Fed. 92-97.

3. There was no waiver nor estopped by the act of appellee's officers. Thompson on Corp. (2 ed.), § 4017; 24 Ark. 371; 82 Id. 367; 99 Id. 260; 2 Pom. Eq. Jur., § 804.

McCulloch, C. J. Appellee, Merchants Grocer Company, is a domestic corporation engaged in the wholesale grocery business, and Mrs. N. A. Petty was one of its stockholders, being the owner of thirty shares of the capital stock of the company of the par value of $25 per share, which stood on the books of the company in her name. E. C. Petty & Company, a partnership composed of E. C. Petty and Mrs. N. A. Petty, who were engaged in the retail grocery business, became indebted to appellee on a promissory note and an open account, all of which indebtedness aggregated the sum of $864.41 at the time the present litigation arose. Mrs. N. A. Petty subsequently became indebted to appellant, Bank of Searcy, in the sum of $1,584 for borrowed money and assigned to appellant her said shares of stock in appellee corporation as security for said indebtedness. Said

assignment of stock by Mrs. Petty to the bank was not recorded on the books of the corporation.

While the conditions thus described existed, the firm of E. C. Petty & Company, and each of the individual members thereof, filed a voluntary petition in bankruptcy and were adjudged to be bankrupt and a trustee was subsequently elected for each estate. Appellee proved its claim in full against the estate of the copartnership, without making any claim of preference or offering to surrender its security, but did not file any claim against the bankrupt estate of Mrs. Petty. A small dividend was declared on the estate of the bankrupt copartnership and appellee accepted its share thereof. Appellant proved up its claim against the bankrupt estate of Mrs. Petty, as a secured creditor, and obtained from the trustee an order for the sale of the pledged shares of stock, and at the sale became the purchaser thereof. Demand was then made by appellant upon the officers of appellee corporation for transfer of said shares of stock on the books of the corporation, and upon the same being refused this action at law was commenced by appellant against appellee to require such transfer to be made. The circuit court heard the case upon the testimony of witnesses and refused to order a writ of mandamus, from which judgment denying relief appellant took an appeal to this court.

(1) The contention of appellee is that it had a lien on said shares of stock under the statute of this State which provides that "such corporation shall at all times have a lien upon all the stock or property of its members invested therein for all debts due from them to such corporation." Kirby's Digest, section 853. On the other hand it is contended by appellant that such lien, if it ever existed, was waived by appellee in proving up its claim against the estate of the bankrupt copartnership, as an unsecured creditor, without offering to surrender the asserted security of the statutory lien. It is not contended by counsel for appellant that appellee did not originally have a lien on the stock which was superior

to appellant's lien as pledgee.  It is clear that under the statute such lien on the shares of stock of Mrs. Petty existed, even though the indebtedness was that of a copartnership of which she was a member.  The individual liability of a member of a copartnership for debts of the firm is primary and not collateral.  "But the fact remains as true as ever," says Mr. Justice Holmes, speaking for the Supreme Court of the United States in *Francis* v. *McNeal,* 228 U. S. 695, "that partnership debts are debts of the members of the firm, and that the individual liability of the members is not collateral like that of a surety, but primary and direct, whatever priorities there may be in the marshalling of assets."

The view that such a character of indebtedness falls within the statutory lien of the corporation on the stock of its share holders is sustained by abundant authority. In Thompson on Corporations, volume 4, section 4010, the law is stated to be that "among other forms of indebtedness the lien has been held to attach to * * * debts due the corporation from a partnership in which the stockholder is a partner."  See also *Planters & Merchants Mutual Insurance Co.* v. *Selma Savings Bank,* 63 Ala. 585; *In re Bigelow,* 3 Fed. Cases, 1395; *Arnold* v. *Suffolk Bank,* 27 Barb. (N. Y.) 424; *Citizens Bank* v. *Kalamazoo Bank,* 111 Mich. 313.

This court has not had occasion heretofore to pass directly upon the question but our decisions construing the section of the statute referred to give it the broadest effect in declaring liens in favor of a corporation for debts due by its stockholders.  *Oliphint* v. *Bank of Commerce,* 60 Ark. 198; *McIlroy Banking Co.* v. *Dickson,* 66 Ark. 327; *Springfield Wagon Co.* v. *Bank of Batesville,* 68 Ark. 235; *Bankers Trust Co.* v. *McCloy,* 109 Ark. 160.

(2)  The lien undoubtedly existed, but the real question in the case, which counsel on each side debate with much earnestness and force, is whether or not appellee waived this lien by proving up its claim against the estate of the bankrupt copartnership as an unsecured cred-

itor and by accepting dividends based on the allowance of the full claim. The solution of this question depends upon whether or not, under a proper construction of the Federal bankruptcy law, the appellee was required to surrender its security before it could be permitted to prove up the full amount of its claim as an unsecured creditor. It involves the doctrine of election, because if appellee made an election to stand as an unsecured creditor it can not afterwards take the inconsistent position of being a secured creditor and assert the right to enforce its security. In other words, the election to appear as a secured creditor constitutes an abandonment of the security.

The bankruptcy act (section 57, subdivision ''e'') contains the following provision on the subject of secured creditors: ''Claims of secured creditors and those who have priority may be allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities, or priorities, but shall be allowed for such sums only as to the courts seem to be owing over and above the value of their securities or priorities.'' Another subdivision of the same section (''h'') contains the following provision: ''The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance.'' The bankruptcy act (section 1, subdivision 23) defines the words ''secured creditor'' as follows: ''Secured creditor' shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this act, or who owns such a debt for which some indorser, surety, or other persons secondarily liable for the bankrupt has such security upon the bankrupt's assets.''

(3-4-5)   So it appears from the express terms of the bankruptcy statute that a claim is not deemed to be a secured one unless it constitutes either directly or indirectly a lien on the property of the bankrupt estate. The fact that the debt is secured collaterally does not make it a secured claim within the meaning of the Federal statute. The adjudication of the bankruptcy of a copartnership necessarily draws to it the estates of the individual members of the copartnership. *Francis* v. *McNeal, supra; Abbott* v. *Anderson,* 265 Ill. 285, 106 N. E. 782, L. R. A. 1915 F., p. 668. But for certain purposes the statute recognizes the copartnership as a separate entity. The Supreme Court of the United States, in *Francis* v. *McNeal, supra,* after calling attention to the different sections of the bankruptcy act having reference to partnership assets, said that "No doubt these clauses taken together recognize the firm as an entity for certain purposes, the most important of which, after all, is the old rule as to the prior claim of partnership debts on partnership assets and that of individual debts upon the individual estate." The statute expressly provides that the "net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts." Section 5, subdivision F.

It follows that if this separate entity is preserved for the purposes indicated, a specific lien on the separate property of an individual member of a copartnership does not constitute a claim against a copartnership a secured one within the meaning of the bankruptcy statute so as to require a surrender of the security before the full amount of the claim can be proved against the copartnership. There are no cases directly on that point but we think that the necessary result of the construction of the act given by the Federal courts leads to that conclusion.

District Judge Lowell, in deciding a case under the bankruptcy statute of 1867, said: "When one partner has pledged his shares for the debt of the firm, proof

may be made in full against the assets of the firm, because it is only when the proof is against the same estate which furnished the security that a sale and application of the security is required by the bankrupt law." *Ex parte Whiting*, 29 Fed. Cases, No. 17573. This is the construction of the statute which is given by all the text writers on the subject of the National bankruptcy Act. "An individual creditor of one partner having a security on the firm estate may prove for the full amount of his debt against the individual estate without giving up his security, and on the other hand a creditor of a partnership, whose debt is secured by mortgage or lien on the individual estate of one of the partners, may prove for the full amount of his debt against the firm estate, without giving up his security." Loveland on Bankruptcy, p. 566. In Remington on Bankruptcy (volume 1, section 756), the law is stated to be that "property of individual members of a partnership held as security for a firm debt need not be deducted in the allowance of the claim against the partnership estate." And in Collier on Bankruptcy, p. 724, the law is stated as follows: "No matter how great may be the security which one may have, if it be property of another than the bankrupt, the creditor may prove his entire claim against the bankrupt estate, and receive a dividend thereon, and thereafter institute proceedings to enforce his claim upon the security for the balance. And this rule applies even where the security that is held is security for a partnership debt but is property of individual members of the firm, the partnership and the individual estates being considered distinct and separate."

(6-7) We think that is the correct interpretation of the bankruptcy statute. The fact that the statute recognizes the right of the partnership creditors to have satisfaction out of the individual assets of the partners after the individual debts are paid does not make the security against the property of the individual creditor a secured claim as against the copartnership. The provisions of the bankruptcy act with respect to

priorities between creditors of copartnerships and creditors of the individual members thereof is a mere recognition of the common law rule on the subject, and there would be no equity in requiring the creditor of a copartnership to give up his security on the property of an individual member as a condition upon which he can participate in the assets of the copartnership on an equality with other creditors. Such a creditor is not denied, upon any rule of equity, an equal participation because he holds individual security. Any other view would deny him the advantage which he has obtained by that vigilance which the law not only permits but which sound policy encourages. Therefore a copartnership creditor who holds security from the individual members of the firm, is not put to any election when he comes to prove his claim against the estate of the copartnership, and therefore he does not have to surrender his security before he can prove his claim in full. Such is the rule applicable to the facts of this case, and we hold that appellee did not abandon its lien against the stock of Mrs. Petty as an individual member of the firm of E. C. Petty & Co. It could not be compelled to make a transfer of the stock on the books of the company to a third party until its debt had been paid, and the circuit court was correct in so deciding.

It is also contended that the treasurer of the corporation waived the lien, *pro tanto,* by paying to Mrs. Petty the dividends on the stock after he acquired information that appellant was asserting a claim of ownership of the stock. The proof on the part of appellant is that its cashier, Mr. Watkins, went to Mr. Ward, the treasurer of the Merchants Grocer Company, and consented to the payment of the dividend to Mrs. Petty on condition that the stock be transferred to appellant. The proof is that Mr. Ward stated that he had no authority to make any transfer, but that in accordance with the agreement between appellant and Mrs. Petty he would give the latter a check for the dividend, which was done. It can not be said that there was a waiver of

the lien to the extent of the amount of dividend which appellant lost by reason of its consent to the payment over to Mrs. Petty, for according to the findings of the court upon legally sufficient evidence Mr. Ward had no authority to make the transfer, and in addition thereto the appellant at that time knew that the appellee was asserting its lien against the stock.

Upon the whole we are of the opinion that the decision of the circuit court in favor of appellee was correct, and the judgment is therefore affirmed.