INTERSTATE GROCER COMPANY v. NATIONAL BANK OF
COMMERCE IN ST. LOUIS.

Opinion delivered September 26, 1927.

CORPORATIONS—WAIVER OF STATUTORY LIEN ON STOCK.—Where a corporation filed a claim against a bankrupt stockholder as an unsecured creditor, without knowing that the bankrupt had discharged the debt, as security for which it had waived the statutory lien on its stock owned by the bankrupt, but, after learning of this, still failed to claim its lien, *held* that it was estopped to assert its lien against the bank holding its assignment from the former creditor of the lien and waiver.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*W. G. Dinning,* for appellant.

*Brewer & Cracraft,* for appellee.

McHANEY, J. John J. Hughes was the owner of certificate No. 147 for 44 shares of stock in appellant corporation, of the par value of $25 each, and, on September 30, 1920, at a time when he was indebted to the Ameri-

can Bank of Commerce & Trust Company of Little Rock, Arkansas, W. W. Moore, secretary of appellant, executed the following waiver of its statutory lien on said stock:

"State of Arkansas, County of Phillips.

"I, W. W. Moore, do hereby certify that John J. Hughes is the owner of 44 shares of the capital stock of the Interstate Grocer Company, a corporation organized and doing business under the laws of Arkansas, evidenced by stock certificate No. 147 of said corporation. That said corporation has no lien or claim whatever on said stock, and hereby acknowledges that said stock is transferred as security to the American Bank of Commerce & Trust Company, Little Rock, Ark., for the payment of $_____ with interest at_____per cent. per annum, or for any other indebtedness now existing or that may be hereafter contracted.

"Dated at Helena, Ark., Sept. 30, 1920. W. W. Moore, Secretary of the above named corporation."

This indebtedness to the American Bank of Commerce & Trust Company was evidently paid off on or about June 5, 1922, as, on that date, the American Bank of Commerce & Trust Company assigned the above-mentioned waiver of lien to appellee by indorsement thereon in the following language:

"June 5, 1922.

"We hereby assign all rights of lien as expressed in the waiver on the opposite side of this sheet in favor of the National Bank of Commerce, St. Louis, Missouri, without recourse of any kind whatsoever on this institution. American Bank of Commerce & Trust Co., Little Rock, Arkansas. By W. A. Hicks, V. P. and Cash."

On June 5, 1922, Hughes was indebted to appellee in a large sum of money, and deposited with appellee, or its agent, the 44 shares of stock above mentioned, together with the waiver of lien above set forth, with the indorsement thereon. On December 5, 1922, this indebtedness by Hughes to appellee was renewed, and this stock certificate and other collateral remained with

appellee as collateral security for the payment of his indebtedness. Hughes paid a portion of his indebtedness to appellee, and, on March 13, was adjudicated a bankrupt in the Helena Division of the Federal District Court of the Eastern District of Arkansas, at a time when he was still indebted to appellee in a large sum of money. During all of the times hereinbefore mentioned Hughes was indebted to the appellant, and, on the date of the adjudication, owed appellant the sum of $1,094.94, for which amount appellant filed claim with the referee in bankruptcy as an unsecured creditor, and without claiming or asserting any lien upon the stock in question, and without giving Hughes credit for the value of the stock in question. In its proof of claim in bankruptcy, appellant made the following statement: "That the said Interstate Grocer Company has not, nor has any person by its order or to the knowledge and belief of said deponent, for its use, had or received any manner of security whatever, or any note for such account, nor has any judgment been rendered thereon, and that the only securities held by the said_____for said debt are the following"; and no securities are listed opposite said statement.

On June 29, 1923, appellee wrote appellant advising it that it held this stock, giving the certificate number, in which it claimed the dividend, if any, thereon. Thereafter followed considerable correspondence between the parties regarding the stock, in which appellee sought to have appellant transfer the stock to it, and in which appellant demanded to see the stock and the waiver, which was sent by appellee to its correspondent bank in Helena, were submitted to appellant on September 4, 1923, and it refused to transfer the stock, because it claimed a statutory lien thereon for the indebtedness due it by Hughes. On October 20, 1923, appellee filed its claim in bankruptcy as a secured creditor for the balance due on its indebtedness, and, having reached an agreement with the trustee as to the value of the securities held by it as collateral, including the stock in con-

troversy, which was valued at $1,100, the value of all securities was credited on the note and claim filed in bankruptcy for the balance due as an unsecured claim, and the value of the securities so agreed upon between appellee and the trustee was approved by the referee. On November 30, 1923, a dividend of 7½ per cent. was declared and paid, and on May 24, 1924, another and final dividend of a little more than one-half of 1 per cent. was declared and paid, both of which were accepted by appellant, and thereafter the bankrupt was discharged. On these facts the lower court entered a decree holding that the 44 shares of stock in question was the property of appellee, and directing appellant to transfer same on the books of the corporation and issue a new certificate for a like number of shares to the appellee, together with the payment of dividends which had been declared on said stock, in the sum of $132, with interest as set forth therein. From the decree against it appellant has prosecuted this appeal.

The only question presented to this court for decision, as stated by counsel for appellant, is "whether or not the appellant is estopped by its conduct to now assert its statutory lien on the shares of stock in question for the purpose of enforcing collection of an indebtedness due it by the owner of the stock." Appellant concedes that, "if the conduct of the appellant company is such as to warrant a finding that it has made an election to rely upon the dividends to be declared by a court of bankruptcy rather than upon the lien given it by statute for enforcing collection of its demand, then the decision of the lower court was correct." Counsel for appellant contends, however, that, if "the claim of this appellant was filed as an unsecured claim with the referee in bankruptcy under a misapprehension of facts," without fault or negligence on its part, it should not be held to an election, and that the doctrine of estoppel would not prevent the enforcement of its statutory lien.

As above stated, appellant filed its claim in bankruptcy, without claiming a lien, on March 20, 1923, and

a little more than 90 days thereafter, June 29, it received a letter from appellee advising it that it held this stock as pledgee thereof, and claiming any dividends thereon after that date. Reply was made to this letter on July 5, in which appellant requested proof of the fact that it was the holder of this stock, in which it said: "It will be necessary for you to prove your claim, not that we doubt your statement. The best way would be to send this stock in, together with release, and have new stock issued for it. The writer was under the impression that this stock had been released by us, but we find no record of it, and said release would have to be established." A brief history of the success of the company was given in this letter, and a promise to send appellee the semi-annual statement was made. Reply was made to this letter by appellee on July 6, suggesting that appellant confer with its counsel, and on July 9 appellant wrote appellee, acknowledging receipt of the letter of the 6th, and stated: "We have no idea of contending with you concerning this matter with reference to John J. Hughes' stock. We cannot send dividends to any person or persons until they establish their rights to receive such dividends. We need no legal advice on this matter. If you hold this stock as pledgee and have our release, when you have established this fact to our satisfaction, we will then recognize you as the proper source to receive the dividends."

On July 13 appellee wrote appellant that they were sending the stock to the First National Bank at Helena, and requesting that the stock be transferred to their nominee. The stock was sent by appellee to its correspondent, who took the matter up with appellant, and for the first time it claimed to have a lien on the stock by reason of an indebtedness due it by Hughes.

We are of the opinion that the chancery court correctly held that appellant is estopped to assert its statutory lien on the stock because of its election to file its claim as an unsecured creditor of the bankrupt. It is true that, at the time of filing the claim in bankruptcy,

appellant did so under a misapprehension of fact, as it had no knowledge of the discharge of the indebtedness of Hughes to the American Bank of Commerce & Trust Company, but, shortly thereafter, it did learn of this fact, within ample time to have amended its claim in bankruptcy and reestablished its claim as a secured creditor and had the value of its security estimated. It did not do this, but, with the full knowledge of appellee's claim thereto, and with either the actual or constructive knowledge of its having filed its claim in bankruptcy as a secured creditor, with the value of the securities, including the value of this stock, credited thereon, appellant took no steps to have its rights to the stock adjudicated in the bankruptcy court. As this court said, in the case of the *Bank of Searcy* v. *Merchants' Grocery Company,* 123 Ark. 403, 185 S. W. 806, "it involves the doctrine of election because, if the appellee (grocer company) made an election to stand as an unsecured creditor, it cannot afterwards take the inconsistent position of being a secured creditor and assert the right to enforce the security. In other words, the election to appear as an unsecured creditor constitutes an abandonment of the security."

Quoting again from the same opinion, on page 407, this court quoted from the bankruptcy act as follows: "The bankruptcy act (§ 57, subdivision 'e') contains the following provision on the subject of secured creditors: 'Claims of secured creditors and those who have priority may be allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities, or priorities, but shall be allowed for such sums only as to the court seems to be owing over and above the value of their securities or priorities.' Another subdivision of the same section ('h') contains the following provision: 'The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors,

or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance.' The bankruptcy act (§ 1, subdivision 23) defines the words 'secured creditor' as follows: 'Secured creditor' shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this act, or who owns such a debt for which some indorser, surety, or other persons secondarily liable for the bankrupt has such security upon the bankrupt's assets.' "

If appellant had desired to assert its claim in bankruptcy as a secured creditor, it would have been necessary for it to have asserted its lien and had the value of the stock determined in the manner set forth in the bankruptcy act. And, although it filed its claim as an unsecured creditor in ignorance of its rights, or under a mistake of fact or law, it had the right, after it came into the possession of facts which put it on notice that another was claiming the security which it claimed, to have amended its claim in bankruptcy, so as to have asserted its lien and saved itself from the necessary consequences of election and estoppel, as is here presented.

One of the recent cases on this subject is that of *In re O'Gara Coal Co.,* 12 Fed. (2d) 426, 46 A. L. R. 916, cited and quoted from by counsel for appellee as follows:

"In bankruptcy there have been many decisions in the district courts, all to the effect, so far as we have found, that the consequence of filing a secured claim as an unsecured debt is the waiver of the security. *White* v. *Crawford* (C. C.) 9 F. 371; *In re M. I. Hibbler Machine Co.* (D. C.), 192 F. 741; *In re Fisk & Robinson* (D. C.), 185 F. 874; *In re Little* (D. C.), 110 F. 621, 627 (Judge Shiras); *In re Norris,* 18 Fed. Cas. page 316, No. 10, 303; *In re High,* 12 Fed. Cas. page 133, No. 6, 473; *In re Jaycox,* 13 Fed. Cas. page 409, No. 7, 242, in which case it was held, however, that, when such proof was made through ignorance or mistake, a creditor ought to be allowed

to withdraw his proof land prove as a secured creditor. *In re Granger,* 10 Fed. Cas. page 958, No. 5, 684. The answer to the objection that the filing of the amendment to the claim for allowance as a secured debt was without permission of the court should have been filed earlier, might be well taken under different conditions. But here no steps were taken for the allowance of the claim as secured until after the case was returned from the Supreme Court and several years after the decree of May 9, 1919, ordering payment of all claims. Unquestionably, great latitude has been allowed, as there should be, in the amendment of claims. There are, on the proposition, many district court decisions. *In re Myers* (D. C.), 99 F. 691, 693, an Indiana case, District Judge Baker said: 'The court undoubtedly possesses the power, in its discretion, and in a proper case, to allow proofs of debt to be amended, and, in case of mistake or ignorance, either of fact or law, will generally exercise that power, in the absence of fraud, and, when all the parties can be placed in the same situation that they would have been in if the error had not occurred, and where justice seems to demand that the amendment should be made.' See *In re Wilder* (D. C.), 101 F. 104; *In re Falls City Shirt Co.* (D. C.), 98 F. 592; *In re Hubbard,* 12 Fed. Cas. page 775, No. 6, 813; *In re Fisk & Robinson* (D. C.), 185 F. 974. See also *Hutchinson* (D. C.) v. *Otis,* 190 U. S. 552, 23 S. Ct. 778, 47 L. ed. 1179, where the court permitted the amendment and granted the relief because of a mistake of fact. All those cases show that amendments are only allowed because of some mistake or error, and in furtherance of justice. Here the alleged amendment of the claim sets up no error or mistake, and none is shown in the record. From the situation of the receiver we must assume that he knew that the collateral was worth at least $50,000 on January 1, 1917, and yet he delayed seven months thereafter before filing his amended claim.''

It will be seen that Judge Page, of the Circuit Court of Appeals of the 7th Circuit, made a very

exhaustive review of the authorities and states the law clearly with reference to this matter. Taking all the facts and circumstances into consideration, including the fact that appellant had executed a waiver on this stock in favor of the American Bank· of Commerce & Trust Company, which had been assigned by it to appellee, and which had never been recalled by appellant, and its waiver of lien surrendered and canceled, together with the other matters hereinbefore stated, we hold that the appellant had its election, and is now estopped to assert a lien on the ·stock in question.

It necessarily follows that the judgment must be affirmed. It is so ordered.