### BROWN v. O'CONNELL.

### In re CENTRAL PLANING MILL.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

#### No. 2,118.

BANKRUPTCY (§ 336*)—PROOF OF CLAIM—AMENDMENT.

Where a creditor filed a claim against the estate of a bankrupt in the form of a book account, an amended claim, based on promissory notes

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the bankrupt, may be treated as an amendment of the original claim, and the court may permit it to be filed after the expiration of the year allowed for filing claims, where it is shown that the notes were given in settlement of the account, but were not shown by the creditor's books, that the claim is just, and that the original claim was based on the account through inattention, or because the creditor did not realize that it made any difference as to the form of proof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 523; Dec. Dig. § 336.*]

Appeal from the District Court of the United States for the First Division of the Northern District of California.

In the matter of the Central Planing Mill, a corporation, bankrupt. From an order allowing the claim of W. J. O'Connell, W. S. Brown, trustee, appeals. Affirmed.

Charles W. Hoag, of Los Angeles, Cal., for appellant.

F. R. Sweasey, of San Francisco, Cal., and A. B. Reynolds, of Sacramento, Cal., for appellee.

Before GILBERT, HUNT, and ROSS, Circuit Judges.

HUNT, Circuit Judge. On March 7, 1910, the Central Planing Mill, a corporation, was adjudged a bankrupt by the District Court of the United States in and for the Northern District of California, and the matter was referred to a referee for usual further proceedings. On May 14, 1910, W. J. Johnson filed proof of debt against the bankrupt. A copy of the items as set forth in his claim is as follows:

Oakland, California, April 20th, 1910.

| | | |
|---|---|---|
| Feb. 25, '09, to 25,000 ft. redwood 1, at $31.00, stakes and ties on car | $ 775 | 00 |
| March 31st, to 18,500 ft. clear redwood at $35.00 | 647 | 50 |
| April 20th, to 7,608 ft. clear white pine at $42.00 | 319 | 54 |
| April 23d, cash advanced | 250 | 00 |
| | $1,995 | 28 |
| Feb. 25th, cash | 200 | 00 |
| Sept. 14th, '09, note | 395 | 20 |
| | $2,590 | 48 |

Credit.

| | | |
|---|---|---|
| By freight bills paid by Central Planing Mill | $ 80 | 24 |
| | $2,510 | 24 |

We note an error in the above-quoted footings, but this was evidently clerical, and is not material.

Thereafter in due form W. J. O'Connell became the assignee of the creditor, Johnson. The trustee contested the claim, and after a hearing before the referee it was ordered on March 14, 1911, that the items of the claim set out as open account be expunged, but that the claims for the amount set forth as due on the promissory note for $395.20 dated September 14, 1909, be allowed. The referee further ordered that the claimant be allowed five days to

determine whether he would file "an amended claim or an amendment to his claim."

Thereafter, on April 19, 1911, O'Connell filed what he designated in caption as an "Amended Proof of Claim." This claim consisted of a promissory note made by the Central Planing Mill for $900, dated at Sacramento, February 25, 1909, due 90 days after date, payable to the order of W. J. Johnson; also a promissory note for $1,000, dated at Sacramento, February 25, 1909, by the Central Planing Mill, due 4 months after date, payable to the order of W. J. Johnson.

To support this claim, and attached to the notes exhibited, was Johnson's affidavit, wherein, after reciting the filing of his original proof of claim, he set forth that, through inadvertence in furnishing his attorney the information from which to make up his claim, he had described it as for goods, wares, and merchandise and for cash advanced, and for $395.20 due on a promissory note; that upon his books of account the items, other than the note for $395.20, had been shown to be upon open account, but that as a fact deponent had received from the Central Planing Mill two other notes, dated February 25, 1910, one for $900, due 90 days after date, and one for $1,000, due 4 months after date; that the reason deponent had omitted said notes from his claim was that, before the adjudication in bankruptcy, deponent had hypothecated the two last-mentioned notes with the Bank of Germany at Oakland, Cal., and that upon the adjudication in bankruptcy deponent was required by the said bank to "take up" the said notes, which were deemed worthless; that deponent took up the notes, by giving a new note therefor in the sum of $2,057.49, which note was afterwards paid by O'Connell, to whom deponent owed the amount thereof; that, in his "vexation and annoyance" at the seeming valueless character of the two notes already referred to, deponent was careless of where he placed them, and they were mislaid; that as the corporation had been adjudged a bankrupt, and as the notes had been redeemed by deponent, he believed the merchandise consideration for the notes, the value of the goods and merchandise and cash advanced, were the basis thereof, and that he had made his claim accordingly, and did not advise his counsel of the existence of the notes, not knowing that it was necessary for him to produce the said notes, or to look for them, until the petition in opposition to the allowance of his claim was filed. Deponent prayed that his amended proof of claim be allowed, and that the claim be allowed as amended.

The referee granted a hearing upon this application, and by stipulation the evidence taken in support of the original claim and the evidence offered at the new hearing were to be considered. The referee thereafter, on May 8th, found that the promissory notes for $1,000 and $900, respectively, dated February 25, 1909, and set out in the "amended proof of debt," did not include the items of indebtedness as set out in the original claim, and that of the amount claimed the sum of $1,217.04 was for debt incurred after the date

of the said notes. From these findings the referee concluded that the proof of debt was not an amendment to the original proof, but was an original proof of debt, and as such was filed more than one year after adjudication, except as to the note of $395.20. The claim was therefore reduced to $395.20, and allowed in said amount.

The matter was thereafter duly certified to the District Court; the question involved being stated by the referee as follows: Do the promissory notes set out in the proof of claim filed April 19, 1911, constitute an amended claim, or are they an original claim?

The learned District Judge held that under the evidence the items of indebtedness or account set out in the original claim formed part of the consideration of the two notes which were rejected, and that the referee should have regarded the last claim, which set up the two notes, as an amendment, and ought to have allowed the whole claim for the amount of the several notes, to wit, $1,000, $900, and $395.20, or a total of $2,295.20. Accordingly, the order of the referee was reversed, and "the amended claim" was allowed in the sum of $2,295.20.

The trustee in bankruptcy then appealed to this court, alleging that the District Court erred, because the proof of debt filed by O'Connell on April 18, 1911, was an original and not an amended claim, and was not a provable debt against the estate of the bankrupt.

The evidence clearly establishes the fact that the rejected promissory notes represented debts which were actually due by the bankrupt corporation when bankruptcy proceedings were begun. A witness who had been bookkeeper for the corporation testified that the books showed that there were three outstanding notes, one for $1,000, one for $900, both dated February 25th, and one for $395.20, dated September 14th. It was also proved that none of the notes had been paid. It appears that the original claim (except for the note for $395.20), which was filed soon after the adjudication in bankruptcy, represented items for lumber and cash furnished from time to time, but that as a fact the amounts due for such items had been included in the promissory notes for $1,-000 and $900, respectively, given by the corporation. The books of the creditor do not seem to have shown the transactions as plainly as perhaps they might have, although they did show that the several amounts as included in the claim were outstanding and unpaid. There should have been entries in the books by which the corporation was credited with the notes, and the open account for merchandise closed, in so far as the items thereof were included in notes given. But, be that as it may, Johnson, who was the payee of the notes, was frequently dealing with the lumber company, and, knowing much of its financial condition, treated the notes as of little value. Resorting to his own books of account to make up his claim, and finding therein a merchandise account for $2,195.28 (correct addition would make it $2,192.04), and only one note, that for $395.20, entered as due by the lumber corporation, he made up

his claim as it was first presented to the trustee, and in this way the claim was made for a merchandise account, and only one note.

There is no suggestion of fraud on the part of Johnson, and no dispute of the justice of his claim for the full sum represented by the notes. It is true, the notes were dated February 25, 1909, which was prior to the dates, March 31st and April 20th and April 23d, respectively, upon which certain items of the original claim appear to have been sold or advanced; but the evidence makes it clear that, while the two notes involved were dated February 25th, as a matter of fact neither of such notes was given by the corporation to Johnson until March, when they were voluntarily sent to him, and that the amounts stated in the notes included March indebtedness. As we understand the evidence, the note for $395.20, given later, on September 14th, would seem to have been in further adjusting accounts after April 1st, and up to the date of the note. The evidence also discloses that the lumber company dealt largely with Johnson, and had a "working arrangement" with him whereby, whenever it was seen by the company that it was going to be short of cash to meet one of its notes, Johnson was to forward to the company a check sufficiently large to pay the note, so that he (Johnson) "would not be embarrassed" by his bank in Oakland.

Enough of the case has now been stated to show that the rejected notes are justly due, and that every principle of right should be applied to give the owner of them the benefit of a decree, if it can be awarded without doing violence to some controlling rule of law. That Johnson ought to have based his original claim upon the notes goes without saying. But he was honest in going to his books to make out his claim, and honest in believing that they correctly showed the amounts due to him, and that he could recover on his book account. The fact that afterwards his claim was disputed, and that it turned out that under the conditions he should have stated his claim as for moneys due on three promissory notes, instead of upon an account and one such note, proves lack of appreciation of the form of statement which he should have employed to assert his claim, and ignorance of possible consequences of his error, but nothing more; and under such circumstances the courts will not refuse relief to the creditor, but will allow him to show that the items alleged to be due as upon open account are included in amounts payable under written promissory obligations, and will hear his explanation of how and why he filed his claim in part for an open account and for one promissory note, and may allow amendment of the original claim, so as to show the precise form in which all the indebtedness stood at the time of the adjudication in bankruptcy, and, no rights of third persons being prejudiced, will not deny such right of amendment merely because the application and proof are made subsequent to one year after adjudication.

The principle of a liberal authority to amend claims in bankruptcy has found repeated approval in decisions, and where, as in this in-

stance, there was enough in the original proof by which to amend, and the District Court has approved of the amendment, an appellate court should be reluctant to disturb the ruling. In re Myers (D. C.) 99 Fed. 691; In re Roeber, 127 Fed. 122, 62 C. C. A. 122; In re Kessler, 184 Fed. 51, 107 C. C. A. 13; Hutchinson v. Otis, etc., Co., 190 U. S. 552, 23 Sup. Ct. 778, 47 L. Ed. 1179.

The decree of the District Court is affirmed.